# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter M. Moloney, | Case No. 19-cv-252 (WMW/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| One Off Effects LLC, | |
| Defendant. | |

This matter is before the Court on Defendant One Off Effects LLC's ("One Off") Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 4) ("Motion"). The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends the Motion be granted and the case dismissed.

## I.   BACKGROUND

Plaintiff Peter Moloney ("Moloney") commenced this action *pro se* in the Second Judicial District in Minnesota State Court by serving One Off on January 3, 2019. (Dkt. No. 1 ¶ 1.) In the Complaint, Moloney alleged that he was a resident of Minnesota and that One Off is based in California. (Dkt. No. 3 ¶ 1.)[1] One Off filed a Notice of Removal

---

[1]   The Complaint is docketed at Docket No. 1-1 and Docket No. 3, but the version at Docket No. 1-1 is missing a page, so the Court will refer to Docket No. 3 when citing to the Complaint.

in this Court on February 4, 2019 based on diversity jurisdiction under 28 U.S.C. § 1332. (Dkt. No. 1 ¶¶ 4-7.)

The Complaint alleges that One Off breached a September 1, 2017 contract between Moloney and One Off for the design, engineering, and creation of a prototype of a vest used for snowball games. (Dkt. No. 3 ¶¶ 5-45.) The Complaint alleges that Moloney began developing the vest when he was a student in design school at Iowa State University. (*Id.* ¶ 7.) According to the Complaint, after further development, Moloney was awarded two patents on the vest in 2015-2016. (*Id.* ¶ 10.) Moloney wanted to refine the vest and develop a prototype, so he searched the Internet for an industrial design company in late winter 2016 and early spring 2017 and identified One Off, among others. (*Id.* ¶¶ 12-13.) Moloney visited the One Off website and believed One Off was a good candidate to produce his work based on their website. (*Id.* ¶ 13.) Moloney's plan was to have a manufactured product available for use by November 2018—in time for an event conducted by Moloney at REI Co-Op, a national recreational equipment seller. (*Id.* ¶¶ 9, 13.) The Complaint asserts two counts: one for breach of the contract and a second for breach of the duty of good faith and fair dealing. (*Id.* ¶¶ 35-45.)

Moloney alleges that after he visited One Off's website, he communicated via the Internet with the CEO of One Off, Brian McKee ("McKee") on May 1, 2017. (*Id.* ¶ 14.) Specifically, Moloney used an Internet service called "Upwork" that permits users to post jobs to be reviewed by freelance service providers. (*Id.* ¶¶ 37-38.) Upwork forwarded Moloney's proposal to several industrial designers, including One Off. (*Id.* ¶ 38.) According to a declaration submitted by Moloney, the Upwork proposal mentioned the

2

anticipated REI event in Minnesota, but the Upwork proposal itself is not part of the record. (Dkt. No. 17 ¶ 10.) McKee responded on May 1, 2017 with an email stating "I would love to jump on a call to discuss your idea in further detail and show you how One Off Effects can help you realize your vision" and describing One Off's capabilities. (Dkt. No. 18, Ex. 2.) Moloney responded by "PM" that he was "talking to one other person" and "So far you are my top pick."[2] (*Id.*) McKee responded "Sure" and "Give us a call when you are ready to discuss." (*Id.*) Moloney alleges that he called McKee a few days later and discussed the project with McKee and a One Off engineer. (Dkt. No. 3 ¶ 15.) On May 3, 2017, Moloney received an email from One Off employee Michael Hewes ("Hewes"), who stated he could create a proposal for Moloney's review and noted that the engineer Moloney had spoken to was a Vikings fan.[3] (*Id.* ¶ 15.)

Moloney then alleges One Off and McKee engaged in a "pattern of broken promises" after these contacts and that he never received a prototype despite paying the agreed upon price of $5,500.[4] (*Id.* ¶¶ 18-33.) Notably, the Complaint describes several instances from May to August 2017 where One Off promised to provide Moloney with information within a certain time frame and failed to do so, requiring Moloney to follow

---

[2]   The Court understands "PM" to refer to a private message over the Internet.

[3]   The Court presumes this is a reference to the Minnesota Vikings National Football League team.

[4]   Moloney alleges the cost was $5500 in one paragraph of the Complaint, $5300 in the prayer for relief as to the amount paid on the contract, but also alleges he paid $2200 and $2300 (totaling $4500). (*Compare* Dkt. No. 3 ¶ 19 *and id.* at 13, *with id.* ¶¶ 20, 27, 39.)

3

up with One Off. (*Id.* ¶¶ 17-33.) In particular, Moloney alleges that he did not hear from One Off for "over three months" after after receiving a May 19, 2017 email from Hewes saying that he was looking for vendors. (*Id.* ¶¶ 19-20.) This gap in communication did not end until Moloney emailed Hewes on August 30, 2017 saying "I just need one prototype. If you still want to work on the snowball vest send over a contract and let[']s get started,"[5] at which point McKee informed Moloney that Hewes no longer worked at One Off. (*Id.* ¶ 20; Dkt No. 31-1, Ex. 1 at 6.) Only after Moloney had reinitiated communication with One Off did the parties enter into the September 1, 2017 contract, which One Off sent to Moloney and which Moloney signed and returned the same day. (Dkt. No. 3 ¶¶ 20-21.) The contract does not mention Minnesota or the REI 2018 event, nor does it state that the design models or prototype would be sent to Minnesota. (Dkt. No. 18, Ex. 1.) Rather, the "SHIP TO" information stated "Same as recipient," where the "BILL TO" information stated "peter moloney" and provided his email address. (*Id.*) Moloney alleges that he paid an advance on September 5, 2017, but that One Off was untimely in performing the agreed-upon work and never provided a prototype as required by the contract. (*Id.* ¶¶ 21-33.) On November 18, 2018, Moloney sent a letter terminating the contract and demanding return of the money he paid to One Off as well as consequential damages. (*Id.* ¶ 34.)

---

[5] The parties discussed finding a vendor to produce a short run (approximately 10 vests) rather than One Off doing the short run production. (Dkt. No. 31-1 at 3-6.) Moloney later decided that he just needed the one prototype from One Off. (*Id.* at 6.) Based on the Complaint, Moloney planned to have the production vests manufactured in China. (Dkt. No. 3 ¶ 31.)

4

One Off filed the present Motion to Dismiss on February 5, 2019 (Dkt. No. 4), supported by a declaration from McKee (Dkt. No. 7). One Off argued that it is an LLC based in California, with its only member a resident of California, and that it does not have sufficient contacts with Minnesota to be subject to suit in Minnesota. (*See id.* ¶¶ 2-5; Dkt. No. 6 at 7.) McKee stated, among other things, "To the best of my recollection, I was not aware of the fact that Mr. Moloney was located in Minnesota until after he contacted us by email to see if we would help him with some product design work." (*Id.* ¶ 8.) McKee also stated that all of One Off's work under the contract was undertaken in California, that One Off "never had any agreement to ship any products or product samples to Mr. Moloney in Minnesota," and that no one from One Off had ever traveled to Minnesota to negotiate or perform any aspects of the contract. (*Id.* ¶¶ 9-10, 12.)

Moloney filed his opposition to the motion on May 21, 2019 (Dkt. No. 17), along with two exhibits including the contract and a May 1, 2017 message history between Moloney and McKee (Dkt. No. 18). One Off filed a reply on May 31, 2019. (Dkt. No. 20.) The Court permitted Moloney to file a sur-reply (Dkt. No. 26), which was filed on July 22, 2019 (Dkt. No. 29). In his sur-reply, Moloney attached additional communications between the parties (Dkt. No. 31) and argued that One Off should be subject to personal jurisdiction in Minnesota because it aggressively pursued the business relationship with him. (Dkt. No. 29 at 4.)

## II.   LEGAL STANDARD

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by

5

pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration in original). Although the evidentiary standard is "minimal," the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits' supporting or opposing the motion." *Id.* at 592 (quoting *Dever*, 380 F.3d at 1072). "The plaintiff bears the burden of proof on the issue of personal jurisdiction, and must establish jurisdiction by a preponderance of the evidence at trial or when the court holds an evidentiary hearing." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). But the Court must "view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). Accordingly, "the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Creative Calling Sols., Inc.*, 799 F.3d at 979.

### III.   DISCUSSION

**A.   Minnesota's Long Arm Statute and Due Process**

"A district court may exercise specific jurisdiction over an out-of-state defendant only to the extent permitted by the state's long-arm statute and the Constitution's due process clause." *Federated Mut. Ins. Co. v. FedNat Holding Co.*, --- F.3d ---, 2019 WL

6

2619871, at *1 (8th Cir. June 27, 2019) (citing *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007)). "Because Minnesota's long-arm statute extends as far as the Constitution allows," the only issue is whether the exercise of personal jurisdiction comports with due process. *Id.* A court may exercise personal jurisdiction over litigating parties either under a theory of specific or general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Here, however, Moloney does not argue that One Off is subject to general jurisdiction in Minnesota (Dkt. No. 17 ¶ 17 ("I do not dispute the absence of general jurisdiction"), so the Court only addresses specific jurisdiction. "Specific jurisdiction is proper only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (quotation marks omitted).

"The due process clause requires that 'the defendant purposefully established "minimum contacts" in the forum State.'" *Federated Mut. Ins.*, --- F.3d ---, 2019 WL 2619871, at *2 (quoting *Burger King*, 471 U.S. at 474). "Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014)).

**B.    Personal Jurisdiction Analysis**

The Eighth Circuit employs "a five-factor test to determine whether asserting personal jurisdiction over a party comports with due process: (1) the nature and quality of

7

the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [the forum state's] interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015) (quoting *Myers v. Casino Queen, Inc.,* 689 F.3d 904, 911 (8th Cir. 2012)). "Although 'the first three factors are primary factors, and the remaining two are secondary factors,' [the Court] look[s] at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm.*, 648 F.3d at 592-93 (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)).

The Court first addresses the "primary factors" including (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action. Here, it is undisputed that One Off is a California Limited Liability Company and that its managing agent and sole member, McKee, resides in California. (Dkt. No. 7 ¶¶ 2-4.) One Off has no business operations, employees, regular customers, or offices in Minnesota. (*Id.* ¶ 5.) Based on the record, the contacts One Off had with Minnesota relevant to the question of specific jurisdiction are the Internet, email, and telephone communications leading to the formation of the September 1, 2017 contract, the contract itself, and subsequent emails regarding One Off's performance of the contract.

The contract between Moloney and One Off, by itself, cannot "automatically establish sufficient minimum contacts" in Minnesota. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can

8

automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.") (emphasis in original); *see also Scullin Steel Co. v. Natl. Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982) (quoting *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)) ("'Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state.'"). "Instead courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Fastpath*, 760 F.3d at 821.

While Moloney stresses the fact that One Off knew he was a Minnesota resident when it entered into the contract, as the Eight Circuit has explained, "'[t]his approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis.'" *Id.* at 823 (citing *Walden v. Fiore*, ––– U.S. –––, 134 S. Ct. 1115, 1125 (2014)). Further, regardless of One Off's knowledge of Moloney's Minnesota residency and the 2018 REI event, there is no allegation or evidence that One Off sought the work because Moloney was a Minnesota resident or because the work had any connection to Minnesota (whether through Moloney or the upcoming REI 2018 event). The contract does not say that the prototype would be delivered to Minnesota, nor does it mention Minnesota, Moloney's physical address, or the REI 2018 event. (Dkt. No. 18, Ex. 1.) Indeed, based on the record, One Off would have been no less interested in the work had Moloney been located in Michigan instead of Minnesota. To the extent One Off communicated and eventually entered into a

9

contract with Maloney, a Minnesota resident, One Off's contacts with the State of Minnesota were "'random,' 'fortuitous,' or 'attenuated' contacts" which do not constitute purposeful availment of the privilege of conducting activities within Minnesota.  *See Burger King Corp.*, 471 U.S. at 475.  Similarly, as to the Internet, email, and telephone communications, the Eighth Circuit has held that "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'"  *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)).

  The main dispute between the parties is the effect of the intended shipment of the prototype to Moloney.  "Under Minnesota law, '[a] crucial factor in determining whether a single sale suffices to justify personal jurisdiction is whether the nonresident in some way solicited the sale or actively engaged in negotiating its terms.  In other words, where a nonresident defendant is an 'aggressor' in the transaction, it is more likely to have purposefully availed itself of the forum state's benefits and protections, so that personal jurisdiction is appropriate.'"  *Patrick's Rest., LLC, Pl., v. Sujit Kumar Singh, Def..*, No. 18-cv-764 (ECT/KMM), 2019 WL 2869082, at *7 (D. Minn. July 3, 2019) (quoting *KSTP-FM, LLC v. Specialized Commc'ns, Inc.*, 602 N.W.2d 919, 924 (Minn. App. 1993)); *see also Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977) (alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) ("[T]he ultimate test is whether the defendant, either as seller or buyer, has

performed 'some act by which (it has) purposefully (availed) itself of the privilege of conducting activities within the forum state thus invoking the benefits and protections of its laws.'"). Thus, the parties dispute which was the "aggressor" with respect to the business relationship.

Based on the evidence and allegations, One Off was not the "aggressor" in the transaction with Moloney. The Complaint alleges that Moloney had conducted Internet research, identified One Off as a potential industrial designer, and visited One Off's website before he uploaded his proposal to Upwork on May 1, 2017. (Dkt. No. 3 ¶¶ 13-14 (Moloney's searching in "late winter and early spring of 2017" resulted in Moloney finding list of companies that included One Off and reviewing website before May 1, 2017 Internet communications).) Further, it was Moloney who reached out to industrial designers via Upwork, not the other way around. (*Id.* ¶¶ 37-38.) Although Moloney characterizes McKee's Internet communication in response to the proposal as an aggressive sales pitch, the communication itself is simply an indication of McKee's interest in performing the requested work typical of any business when presented with a possible job. (*See* Dkt. No. 18, Ex. 2.) After Moloney indicated he was considering another designer, McKee simply replied "Sure" and "Give us a call when you are ready to discuss" rather than trying to persuade Moloney to select One Off instead of the competitive designer. (*Id.*) Nothing in the May 1 communications suggests that One Off was responding to Moloney's proposal in an unusually aggressive manner. Indeed, after a few email and telephone conversations in May 2017, One Off did not follow-up with Moloney for over three months, prompting Moloney to send an email on August 30, 2017

11

stating "I just need one prototype. **If you still want to work on the snowball vest send over a contract and let[']s get started.**" (Dkt. No. 31-1 at 6 (emphasis added).) Based on the record, absent Moloney's August 30, 2017 email asking if One Off was still interested in the project, the September 1, 2017 contract would not have been formed and the parties would not have entered into a business relationship. (*See id.*) The Court concludes that Moloney was the aggressor in forming the relationship and with respect to the anticipated transaction.

The intended delivery of the prototype to Moloney does not alter the analysis. In his declaration, McKee stated that the parties "never had any agreement to ship any products or product samples to Mr. Moloney in Minnesota" (Dkt. No. 7 ¶ 10) and the contract does not reflect any such agreement (Dkt. No. 18, Ex. 1). Even if One Off had agreed to ship the prototype to Minnesota, the Eighth Circuit has found the effect of the shipment of four sample cellular phones to the forum state to be "minimal" and a "'casual' or 'fortuitous' contact rather than a significant contact with the forum. *See Digi-Tel Holdings*, 89 F.3d at 523. If the parties had agreed to ship the prototype to Minnesota, it was incidental to Moloney's residence in that state, not because One Off sought to the benefits and protections of Minnesota. Moloney's business plan to manufacture products based on use of the prototype at a public event and ultimate sale of the products and associated patents that Moloney relies on to argue the contract encompassed more than a single prototype (*see* Dkt. No. 29 at 4) did not provide any benefit to One Off or contemplate One Off's involvement, as One Off would not be manufacturing the products or receive any income from sale of the products or patents.

12

For all of these reasons, the Court finds that the primary factors do not weigh in favor of finding One Off subject to personal jurisdiction.

The fourth factor is Minnesota's "interest in providing a forum for its residents." "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S at 473 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Here, Moloney is a Minnesota resident, and thus Minnesota has an interest in providing him a forum for bringing this action. Accordingly, this factor weighs in favor of finding personal jurisdiction.

The fifth factor considers the convenience to Moloney and One Off of litigating in Minnesota. Minnesota is a convenient forum for Moloney, who resides in Minnesota (Dkt. No. 3 ¶ 2). But Minnesota is inconvenient for One Off, which is located in California and has no employees or offices in Minnesota. (Dkt. No. 7 ¶ 5.) The Court finds this factor to be neutral.

In sum, the Court finds that the three primary factors weigh in favor of dismissal for lack of personal jurisdiction, one favor (Minnesota's interest in providing a forum for its resident) weighs in Moloney's favor, and one factor is neutral. Based on the totality of the circumstances, One Off has not "purposefully availed" itself of the laws of Minnesota and is not subject to personal jurisdiction in this Court. Accordingly, the Court recommends that this case be dismissed.

## C.   Jurisdictional Discovery Is Not Warranted

Moloney also requests that "[a]t the least[,] the Court should allow discovery with respect to [personal jurisdiction]." (Dkt. No. 17 at 6.)  Given Moloney's *pro se* status, the Court will construe this sentence as a motion for jurisdictional discovery.  The problem is that Moloney has not identified any facts that are unknown or disputed which, if discovered, could permit personal jurisdiction over One Off in this case.  In particular, there is no indication that One Off would be in possession of any evidence of contacts with Minnesota specific to this action that Moloney would not also possess.  In his sur-reply, Moloney argues that jurisdictional discovery is warranted because another customer (in an unidentified state) also was dissatisfied with One Off.  (Dkt. No. 30 ¶¶ 2-5; Dkt. No. 30-1, Ex. 1.)  The record reveals that this customer has no connection to the business relationship giving rise to this action, and thus the customer's dissatisfaction is irrelevant to the specific jurisdiction analysis.  When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 n.1 (8th Cir. 2004) (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003)).  Here, Moloney has given no reason why jurisdictional discovery will be fruitful.  The Court already viewed the "evidence in the light most favorable to the plaintiff and resolve[d] all factual conflicts in the plaintiff's favor," *Digi-Tel Holdings*, 89 F.3d at 522, and the Court finds that Moloney has not proffered any allegations that—if supported by evidence found in discovery—would alter

the Court's recommendation regarding the lack of personal jurisdiction over One Off in this case.  Accordingly, the Court denies jurisdictional discovery.

### D.     The Court Recommends that No Settlement Conference Be Set

Moloney has requested that the Court schedule a settlement conference "as soon as possible."  (Dkt. No. 29 at 5.)  Because the Court recommends dismissal for want of personal jurisdiction, the Court recommends that Moloney's request be denied.[6]

### IV.     RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1. Defendant One Off Effects LLC's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 4) be **GRANTED**.

2. Plaintiff Peter M. Moloney's request for jurisdictional discovery be **DENIED**.

3. Plaintiff's request that the Court hold a settlement conference be **DENIED**.


DATED: July 25, 2019                              *s/Elizabeth Cowan Wright*
                                                  ELIZABETH COWAN WRIGHT
                                                  United States Magistrate Judge

---

[6] The Court notes that it held two status calls with the parties to discuss settlement and had encouraged the parties to continue discussing settlement.  (Dkt. Nos. 23, 26.)

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).